**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **MOSES MARKOWSKI AND MARIA MARKOWSKI,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, Inc., TRANS UNION LLC, and CAPITAL ONE AUTO FINANCE INC.,**<br>**Defendants.** | **Civil Action No. 4:26-cv-1022**<br><br>**With Jury Demand Endorsed** |

**COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Moses Markowski ("Moses") and Maria Markowski ("Maria") (collectively "Plaintiffs"), by and through counsel, for Plaintiffs' Complaint against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union"), and Capital One Auto Finance Inc. ("Capital One") (collectively "Defendants"), jointly, severally, and in solido, state as follows:

## I. INTRODUCTION

1. Three of the Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Capital One Auto Finance Inc., is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known

as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiffs are natural persons residing in Zion, Illinois is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax is a Georgia limited liability company that does substantial business in this Judicial District and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Experian does business in this Judicial District and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Trans Union is an Illinois limited liability company that does business in this Judicial District and may be served by delivering a summons

to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6. Upon information and belief, Defendant Capital One is a Delaware corporation that does substantial business in this Judicial District and may be served by delivering a summons to its Legal Department at its headquarters, 7933 Preston Road, Plano, Texas 75024. Capital One is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and Trans Union.

## III. JURISDICTION AND VENUE

8. Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction

of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9. Venue is proper in this District, because Equifax, Experian, Trans Union, and Capital One transact business in this District. Capital One's headquarters is located in this Judicial District, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Eastern District of Texas as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because Equifax, Experian, and Trans Union entered into agreements with Capital One in this Judicial District to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from Equifax, Experian, and Trans Union as part of Defendants' reinvestigations were submitted to Capital One's headquarters and investigated by Capital One using its resources located at or closely connected to this Judicial District. Capital One managed Plaintiffs' account(s) from this Judicial District including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

11. In or around February 2019, Plaintiffs secured an auto loan with Capital One and Capital One assigned account number 620734******("Capital Auto").

12. Due to unforeseen circumstances, Plaintiffs needed to file for bankruptcy protection under Chapter 13 of Title 11.

13. On or around January 30, 2020, Plaintiffs filed for bankruptcy protection under Chapter 13 of Title 11.

14. A redacted copy of Plaintiffs' Chapter 13 Bankruptcy docket report for Plaintiffs' bankruptcy case is attached hereto as Exhibit A.

15. As part of Plaintiffs' Chapter 13 Bankruptcy, it was determined that Plaintiffs were to continue to pay on the Capital Auto loan(s) even after Plaintiffs filed for bankruptcy.

16. The Chapter 13 Plan specifically details that Plaintiffs were to make the auto payments to the Bankruptcy Trustee, and the Trustee would disperse the payments to Capital One.

17. A redacted copy of Plaintiffs' Chapter 13 Bankruptcy Plan is attached hereto as Exhibit B.

18. During Plaintiffs' bankruptcy, Plaintiffs timely completed all of the loan payments for the Capital Auto account(s). Plaintiffs are the free and clear owners of the automobile that was the security interest of the Capital Auto account.

19. On February 12, 2025, the Plaintiffs were discharged from Chapter 13 Bankruptcy.

20. A redacted copy of Plaintiffs' Chapter 13 Discharge Order is attached hereto as Exhibit C.

21. Sometime in March 2026, Plaintiffs obtained Plaintiffs' three-bureau credit reports and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate.

22. Redacted copies of Plaintiffs' March 2026, tri-merge credit reports are attached hereto as Exhibit D and E.

23. Within the Tri-Merge credit report, Plaintiffs noticed that Equifax reported the following inaccuracies for Plaintiffs' Capital Auto account.

24. The Capital Auto account was reporting a payment status of "Wage Earner Plan",

an account rating of “Derogatory”, a date of last payment of December 1, 2019, a date of last activity of December 1, 2019, a high balance of $0.00, and within the creditor remarks it was reporting the “Account involved in Chapter 13 debt adj. Auto included in Chapter 13”.

25. This reporting is incorrect because Plaintiffs completed all the required loan payments for the Capital Auto account, Plaintiffs are the free and clear owners of the automobile that was the security interest of the Capital Auto account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

26. The accurate reporting of the Capital Auto account would have been to report a payment status of “Current”, an account rating of “Paid/Closed”, a date of last activity as of the last payment date, a high balance of $20,053, and should have reported within the creditor remarks section “Auto closed or paid account/zero balance”.

27. The current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was/is the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs’ Chapter 13 Bankruptcy.

28. The current reporting of the Capital Auto account was never an “historically accurate” way to report the Capital Auto account.

29. Within the Tri-Merge credit report, Plaintiffs noticed that Experian reported the following inaccuracies for Plaintiffs’ Capital Auto account.

30. The Capital Auto account was reporting a payment status of “Wage Earner Plan”, an account rating of “Derogatory”, no date of last payment, a date of last activity of January 1, 2020, and within the creditor remarks it was reporting the “Debt included in or discharged through Bankruptcy Chapter 13.”

31. This reporting is incorrect because Plaintiffs completed all the required loan payments for the Capital Auto account, Plaintiffs are the free and clear owners of the automobile that was the security interest of the Capital Auto account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

32. The accurate reporting of the Capital Auto account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

33. The current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was/is the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

34. The current reporting of the Capital Auto account was never an "historically accurate" way to report the Capital Auto account.

35. Within the Tri-Merge credit report, Plaintiffs noticed that Trans Union reported the following inaccuracies for Plaintiffs' Capital Auto account.

36. The Capital Auto account was reporting an account rating of "Derogatory", a date of last payment of February 26, 2024, a date of last activity of February 12, 2025, an account status of "Open", and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

37. This reporting is incorrect because Plaintiffs completed all the required loan payments for the Capital Auto account, Plaintiffs are the free and clear owners of the automobile that was the security interest of the Capital Auto account, and the current reporting is a significant

misrepresentation of this fully paid and closed account.

38. The accurate reporting of the Capital Auto account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, an account status of "Closed", and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

39. The current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was/is the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiff's Chapter 13 Bankruptcy.

40. The current reporting of the Capital Auto account was never an "historically accurate" way to report the Capital Auto account.

41. On or about April 21, 2026, Plaintiffs sent direct disputes to Equifax, Experian, and Trans Union and requested that Equifax, Experian, and Trans Union investigate the reporting of the Capital Auto account, and Plaintiffs specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiffs requested that under the FCRA, Equifax, Experian, and Trans Union conduct reasonable investigations and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the accounts.

42. Redacted copies of Plaintiffs' unsigned dispute letters sent to Equifax, Experian, and Trans Union are attached hereto as Exhibits F, G, H, I, J, and K.

43. Equifax responded to Maria's dispute on April 29, 2026.

44. Redacted copy of Equifax's response is each attached hereto as Exhibit L.

45. Equifax failed to respond to Moses dispute.

46. Plaintiffs requested an updated consumer report to see if any changes were made

on Plaintiffs' Consumer Reports.

47. Equifax's responses and the updated Consumer Reports showed that Equifax made none of the substantive changes Plaintiffs requested in the direct dispute to Equifax and continued to report the Capital Auto account inaccurately.

48. The Capital Auto account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of December 1, 2019, a date of last activity of December 1, 2019, a high balance of $0.00, and within the creditor remarks it was reporting the "Account previously in dispute – now resolved by data furnisher Account involved in Chapter 13 debt adj. Included in Chapter 13".

49. Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Capital Auto account and gave no explanation as to why the Capital Auto account was still reporting inaccurately.

50. Plaintiffs' inaccurate Equifax consumer reports were disseminated to third parties before and/or after the instant dispute.

51. The current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

52. Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Capital Auto account.

53. Upon the Plaintiffs' request to Equifax for verification and correction regarding the Capital Auto account, and in accordance with Equifax's standard procedures, Equifax did not

evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Capital Auto account substantially or reasonably.

54. Equifax has adopted the Metro 2 reporting standard, Equifax deviated from the standard based on its conduct in this case, and by Equifax deviating from the adopted standard, Equifax injured Plaintiffs' credit standing.

55. It is alleged that Equifax did forward some notice of the dispute to Capital One, and Capital One failed to conduct a lawful investigation.

56. Capital One knows how to report the Capital Auto account accurately, and their response to Equifax, Experian, and Trans Union was willfully reckless.

57. Capital One knows the current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

58. Capital One knows the current reporting of the Capital Auto account was never an "historically accurate" way to report the Capital Auto account.

59. Experian failed to respond to Plaintiffs' disputes.

60. Plaintiffs requested an updated consumer report to see if any changes were made on Plaintiffs' Consumer Reports.

61. Experian's responses and the updated Consumer Reports showed that Experian made none of the substantive changes Plaintiffs requested in the direct dispute to Experian and continued to report the Capital Auto account inaccurately.

62. The Capital Auto account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", no date of last payment, a date of last activity of January

1, 2020, and within the creditor remarks it was reporting the "Account was in dispute – now resolved – reported by subscriber. Debt included in or discharged through Bankruptcy Chapter 13."

63. Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Capital Auto account and gave no explanation as to why the Capital Auto account was still reporting inaccurately.

64. Plaintiffs' inaccurate Experian consumer reports were disseminated to third parties before and/or after the instant dispute.

65. The current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

66. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Capital Auto account.

67. Upon the Plaintiffs' request to Experian for verification and correction regarding the Capital Auto account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Capital Auto account substantially or reasonably.

68. Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiffs' credit standing.

69. In the alternative, Experian failed to contact Capital One and therefore failed to perform any investigation at all.

70. In the alternative to the allegation that Experian failed to contact Capital One, it is alleged that Experian did forward some notice of the dispute to Capital One, and Capital One failed to conduct a lawful investigation.

71. Capital One knows how to report the Capital Auto account accurately, and their response to Equifax, Experian, and Trans Union was willfully reckless.

72. Capital One knows the current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

73. Capital One knows the current reporting of the Capital Auto account was never an "historically accurate" way to report the Capital Auto account.

74. Trans Union failed to respond to Plaintiffs' disputes.

75. Plaintiffs requested an updated consumer report to see if any changes were made on Plaintiffs' Consumer Reports.

76. Trans Union's responses and the updated Consumer Reports showed that Trans Union made none of the substantive changes Plaintiffs requested in the direct dispute to Trans Union and continued to report the Capital Auto account inaccurately.

77. The Capital Auto account continued to report an account rating of "Derogatory", a date of last payment of February 26, 2024, a date of last activity of February 12, 2025, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account". Additionally, there were no remarks that this account was disputed.

78. Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Capital Auto account and gave no explanation as to why the Capital Auto account was still reporting inaccurately.

79. Plaintiffs' inaccurate Trans Union consumer report was disseminated to third parties before and/or after the instant dispute.

80. The current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

81. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Capital Auto account.

82. Upon the Plaintiffs' request to Trans Union for verification and correction regarding the Capital Auto account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiffs' information, claims or evidence, and did not make any attempt to verify the reporting of the Capital Auto account substantially or reasonably.

83. Trans Union has adopted the Metro 2 reporting standard, Trans Union deviated from the standard based on its conduct in this case, and by Trans Union deviating from the adopted standard, Trans Union injured Plaintiffs' credit standing.

84. In the alternative, Trans Union failed to contact Capital One, therefore, failed to perform any investigation at all.

85. In the alternative to the allegation that Trans Union failed to contact Capital One, it is alleged that Trans Union did forward some notice of the dispute to Capital One, and Capital One failed to conduct a lawful investigation.

86. Capital One knows how to report the Capital Auto account accurately, and their response to Trans Union was willfully reckless.

87. Capital One knows the current reporting of the Capital Auto account materially misleads lenders to believe Plaintiffs surrendered the automobile that was the security interest of the Capital Auto account and converted the Capital Auto loan to an unsecured debt and discharged the debt by way of Plaintiffs' Chapter 13 Bankruptcy.

88. Capital One knows the current reporting of the Capital Auto account was never an "historically accurate" way to report the Capital Auto account.

89. Plaintiffs elected to obtain an updated copy of Plaintiffs' credit reports due to Equifax, Experian, and Trans Union's responses, or lack thereof responses.

90. Redacted copies of Plaintiffs' updated Tri-Merge credit reports are each attached hereto as Exhibit M and N.

91. Based on Plaintiffs' updated Tri-Merge credit report, it was apparent that Equifax, Experian, and Trans Union made none of the substantive changes Plaintiffs requested in the direct dispute to Equifax, Experian, and Trans Union, failed to update the Capital Auto account after the Chapter 13 Bankruptcy was discharged.

## V. GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA (15 U.S.C. §1681e(b))

92. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

93. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

94. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

95. Equifax knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

96. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

97. After Equifax knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiffs' Capital Auto tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

98. As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and

embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Equifax to comply with Equifax's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Equifax; loss of self-esteem because of Equifax's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Equifax.

99. Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

100. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

101. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

102. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or

correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

103. As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Equifax to comply with Equifax's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Equifax; loss of self-esteem because of Equifax's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Equifax.

104. Equifax's conduct, action, and inaction, were willful, rendering it liable for statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

105. The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

106. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

107. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

108. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

109. Experian knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiffs.

110. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

111. After Experian knew or should have known Plaintiffs' bankruptcy status, history,

and/or payment history were inaccurate for Plaintiffs' Capital Auto tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

112. As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Experian to comply with Experian's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Experian; loss of self-esteem because of Experian's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Experian.

113. Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

114. The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

115. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

116. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

117. As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Experian to comply with Experian's statutory obligations,

including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Experian; loss of self-esteem because of Experian's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Experian.

118. Experian's conduct, action, and inaction, were willful, rendering it liable for statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

119. The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

120. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

121. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

122. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

123. Trans Union knew or should have known of Plaintiffs' bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

124. Despite actual and implied knowledge that Plaintiffs' credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiffs' creditworthiness.

125. After Trans Union knew or should have known Plaintiffs' bankruptcy status, history, and/or payment history were inaccurate for Plaintiffs' Capital Auto tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

126. As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Trans Union to comply with Trans Union's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by

Trans Union; loss of self-esteem because of Trans Union's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Trans Union.

127. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.

128. The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

129. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

130. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

131. As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and

annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Trans Union to comply with Trans Union's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Trans Union; loss of self-esteem because of Trans Union's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Trans Union.

132. Trans Union's conduct, action, and inaction, were willful, rendering it liable for pursuant to 15 U.S.C. § 1681n.

133. The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**CAPITAL ONE'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

134. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out

herein.

135. Capital One violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

136. Capital One further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiffs' disputes of the Capital Auto Tradeline(s), failing to accurately respond to Equifax, Experian, and Trans Union, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Capital Auto Tradeline(s) within the consumer reporting agencies reports.

137. As a result of Capital One's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to: loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Capital One to comply with Capital One's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters,

sending letters, and attempting to decipher letters, reports, and other instruments provided by Capital One; loss of self-esteem because of Capital One's continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believe Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiffs have spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Capital One.

138. Capital One's conduct, action, and inaction, were willful, rendering it liable for statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

139. Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

140. Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

141. Plaintiffs respectfully request that this Honorable Court award Plaintiffs' litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in

accordance with the provisions of the FCRA and/or other laws.

142. The above and foregoing actions, inactions, and faults of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

143. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reporting about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

144. Plaintiffs suffered a variety of damages, including economic and non-economic damage as prayed for herein.

145. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

146. Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiffs' ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; annoyance as a result of being burdened with a false credit reporting history; Plaintiffs' lowered credit scores may have impacted the interest rates Plaintiffs have on current loans; Plaintiffs' lowered credit score may have impacted the interest rates Plaintiffs received during this ordeal; Plaintiffs' lowered credit score may have impacted the credit limits Plaintiffs have on existing accounts; Plaintiffs spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls,

emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiffs in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiffs believes Plaintiffs will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiffs have spent trying to repair Plaintiffs' credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs pray that this Honorable Court:

A. Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Capital One Auto Finance Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiffs' credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D. Order that CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Capital One Auto

Finance Inc., work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiffs might show Plaintiffs are justly entitled.

Date Filed: August 7, 2026

Respectfully submitted,

*/s/ Kiana N. Witcher*

Kiana N. Witcher
State Bar No. 24125464
FCRA-TX@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1182 (telephone)
(612) 370-4256 (fax)

***Lead Counsel for Plaintiffs***

By: */s/ Jonathan A. Heeps*

Jonathan A. Heeps
State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com

***Local Counsel for Plaintiffs***

***COUNSEL FOR PLAINTIFFS***

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

August 7, 2026 | */s/ Kiana N. Witcher*
Date | Kiana N. Witcher